# JAMES FENNELL ET AL. *v.* CITY OF HARTFORD ET AL.
## (15389)

Callahan, Borden, Berdon, Norcott and Palmer, Js.

Argued June 4—officially released August 13, 1996

*Albert J. McGrail,* with whom, on the brief, was *Shelley A. Gilbert,* for the appellants-appellees (plaintiffs).

*Thomas R. Cox*, assistant corporation counsel, for the appellees-appellants (defendants).

BERDON, J. This appeal raises issues regarding whether supervisory police officers are entitled to certain pension and retirement benefits with respect to accrued sick leave and service credits for military time. The plaintiffs, James Fennell, Arthur A. Williams, Jr., and William C. Bracken, three retired police officers of the city of Hartford, brought an action in twelve counts against the defendants, the city of Hartford (city) and the pension commission of the city of Hartford (commission), seeking damages and other relief because of the defendants' alleged improper refusal to pay them certain retirement and pension benefits.

The three plaintiffs, each a retired police officer with at least thirty years of service, are currently receiving a monthly pension. In addition, upon retirement, each of the plaintiffs received a lump sum payment equal to 50 percent of his accrued sick time. The plaintiffs each retired with the rank of captain or higher. Before their promotions to the rank of captain, the plaintiffs were members of the Hartford police union, a collective bargaining unit. Once promoted to captain, the plaintiffs were no longer members of the collective bargaining unit.

The plaintiffs' complaint alleges various claims based on contract and constitutional law. The contract claims were submitted to the jury. Several questions of law, including the constitutional issues, however, were reserved for the trial court's decision. The jury, after answering several interrogatories submitted by the court, found in part for the plaintiffs and in part for the defendants. Specifically, the jury found that the defendants had breached an implied contract, based on a representation made in the pension manual, to include lump sum payments for accrued sick time in the plain-

tiffs' pension calculations. In addition, the jury found that the defendants had breached an express and implied contract, based on the city charter, to include partial years of military service in Fennell's and Williams' pension calculations. The trial court, thereafter, decided several questions of law. Among the issues decided was that Fennell and Williams were entitled, under the Hartford city charter, to have partial years of military service included in their pension calculations.

The defendants moved to set aside the verdict and for judgment notwithstanding the verdict on the various contract claims decided by the jury. The trial court granted the motion with regard to the implied contract claim concerning a statement made in the pension manual, and denied the motion as to the express and implied contract claims regarding the inclusion of partial years of military service in the pension calculations of Fennell and Williams.[1] The plaintiffs appealed from the judgment of the trial court to the Appellate Court and the defendants filed a cross appeal. We transferred the appeal and the cross appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We now affirm the judgment of the trial court.

I

We first address the several issues pertaining to accrued sick leave. Prior to their retirements, the plaintiffs were provided with a pension manual prepared and distributed by the commission that purported to explain and summarize their retirement benefits. Included in the manual was the statement: "Earned sick leave time is not credited to the pension calculation unless you are a Board of Education employee or in the city's non-bargaining unit." The plaintiffs argue that, as "non-bargaining unit" employees, the statement in the pension manual created an implied contract with the

[1] See footnote 15.

defendants to include the plaintiffs' lump sum payments for accrued sick time in the calculation of their pension benefits. To include those sick time payments would have inflated the plaintiffs' salaries in their final year, thereby increasing the basis upon which their pension benefits were calculated. The jury found that the language in the pension manual had created an implied contract obligating the defendants to include that benefit. Upon the defendants' motion, however, the trial court set aside the jury's verdict and rendered judgment notwithstanding the verdict with respect to this claim. We agree with the trial court that the plaintiffs were not entitled to this benefit.

We begin our analysis with a review of several general principles regarding municipal charters and municipal corporations and their employees. "It has been well established that a city's charter is the fountainhead of municipal powers . . . . The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised. . . . Agents of a city, including [its commissions], have no source of authority beyond the charter. . . . In construing a city charter, the rules of statutory construction generally apply. . . ." (Citations omitted; internal quotation marks omitted.) *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 423, 572 A.2d 951 (1990).

"The officer, body or board duly authorized must act [on] behalf of the municipality, otherwise a valid contract cannot be created. Generally the power to make contracts on behalf of the municipality rests in the council or governing body . . . . Generally, no officer or board, other than the common council, has power to bind the municipal corporation by contract, unless duly empowered by statute, the charter, or authority conferred by the common council, where the latter may so delegate its powers . . . ." 10 E. McQuillin, Munici-

pal Corporations (3d Ed. Rev. 1990) § 29.15, p. 315; see *Keeney* v. *Old Saybrook*, 237 Conn. 135, 145–46, 676 A.2d 795 (1996). "It follows that agents of a city, including its commissions, have no source of authority beyond the charter. [T]heir powers are measured and limited by the express language in which authority is given or by the implication necessary to enable them to perform some duty cast upon them by express language." (Internal quotation marks omitted.) *Perretta* v. *New Britain*, 185 Conn. 88, 92–93, 440 A.2d 823 (1981). " '[A]ll who contract with a municipal corporation are charged with notice of the extent of . . . the powers of municipal officers and agents with whom they contract, and hence it follows that if the . . . agent had in fact no power to bind the municipality, there is no liability on the express contract . . . .' " *Norwalk* v. *Board of Labor Relations*, 206 Conn. 449, 452, 538 A.2d 694 (1988). Thus, " 'every person who deals with [a municipal corporation] is bound to know the extent of its authority and the limitations of its powers.' " *John J. Brennan Construction Corp., Inc.* v. *Shelton*, 187 Conn. 695, 704, 448 A.2d 180 (1982); see *Keeney* v. *Old Saybrook*, supra, 149.

A

With these principles in mind, we turn to the plaintiffs' argument that the pension manual created an implied contract. The plaintiffs rely on *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 198–99, 520 A.2d 208 (1987), in which this court held that terms in an employment or personnel manual may create an implied contract between an employer and employee, and that whether such a contract has been created is ultimately a question of fact for the trier of fact to determine. See *Carbone* v. *Atlantic Richfield Co.*, 204 Conn. 460, 471–72, 528 A.2d 1137 (1987) ("under appropriate circumstances, the terms of an employment manual may give rise to an express or implied contract between

employer and employee"). The plaintiffs assert that this legal principle is applicable to the public sector as well as the private sector. We disagree.

In *Pineman* v. *Oechslin*, 195 Conn. 405, 411, 488 A.2d 803 (1985), this court addressed whether Connecticut's statutory retirement plan for state employees was contractual in nature. In *Pineman*, several female state employees brought a class action seeking a declaratory judgment that the pre-1975 State Employees Retirement Act (act) " 'created a contractual obligation obliging Connecticut to maintain the pre-1975 retirement ages for female state employees who had not yet begun receiving retirement benefits when such act was revised.' " Id., 407. As adopted in 1939, the act allowed male employees to retire at age fifty-five with twenty-five years of state service, but allowed female state employees to retire at age fifty with the same length of service. Id., 407–408. Subsequently, in 1974, the variant retirement ages for male and female employees were held to be discriminatory in violation of Title VII of the Civil Rights Act of 1964. Id., 408. In 1975, the act was amended to establish fifty-five years as the retirement age for all state employees with twenty-five years of state service. Id. When considering the contractual approach of other states to public pensions, the court stated that: "Although there is a seductive appeal in the contract-oriented approaches adopted by other jurisdictions, we decline to depart from the well established rules of statutory construction . . . namely, that a statute does not create vested contractual rights absent a clear statement of legislative intent to contract. Upon examination of the case law in this area, it becomes clear that the contract approach plays havoc with basic principles of contract law, traditional contract clause analysis and, most importantly, *the fundamental legislative prerogative to reserve to itself the implicit power of statutory amendment and modification.*" (Empha-

sis added.) Id., 414. This reasoning is equally appropriate when reviewing claims asserted by municipal employees.

"[C]ourts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel." (Internal quotation marks omitted.) Id., 415. We believe that implied contract claims in the public sector, based upon pension or employee manuals, "would only invite endless litigation over both real and imagined claims of misinformation by disgruntled citizens [and employees], imposing an unpredictable drain on the public fisc." *Office of Personnel Management* v. *Richmond*, 496 U.S. 414, 433, 110 S. Ct. 2465, 110 L. Ed. 2d 387 (1990).[2] "Absent a clear legislative indication, we are loathe to attribute an intent to the legislature to draw down the public fisc in favor of those with no substantive entitlement thereto." *Katz* v. *Commissioner of Revenue Services*, 234 Conn. 614, 619, 662 A.2d 762 (1995).

On the basis of the above considerations, we cannot superimpose implied contract principles upon the terms of the plaintiffs' pension based upon a representation in a pension manual. We conclude, as a matter of law, that the pension manual created and distributed by the commission could not confer any additional benefits not provided for by the city's charter.

In this case, the Hartford city charter does not provide that lump sum payments for accrued sick time are to be

[2] In *Office of Personnel Management* v. *Richmond*, supra, 496 U.S. 414, the United States Supreme Court was required to interpret the appropriations clause of the United States constitution, article one, § 9, which provides in relevant part: "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law . . . ." Nevertheless, we believe that the policy considerations of that case apply with equal force to the implied contract claims raised in this case. This is so because the Hartford city council was vested with sole authority to grant additional pension or retirement benefits under the charter and the statutes.

included in the calculations of the plaintiffs' pensions. Furthermore, the charter provides that "[e]xcept as otherwise provided in this charter all powers vested in the city shall be exercised by the court of common council . . . ." Hartford Charter, c. II, § 8. Pursuant to General Statutes § 7-450,[3] an enabling statute, the Hartford city council adopted chapter XVII, § 3, of the Hartford charter, which created the municipal employees' retirement fund. Pursuant to the charter[4] and the statute,[5] the power to amend the city's municipal employees' retirement fund rests solely with the city council.

In order for additional retirement or pension benefits to be conferred on the plaintiffs and other city employees, the city council must adopt ordinances in compliance with the statutory and charter mandates. See Hartford Charter, c. III, §§ 10 through 13. The plaintiffs concede that this was not done. If additional benefits were allowed to be conferred in any other manner, the actions of the commission would impinge on the city council's legislative prerogative to oversee the maintenance of the city's municipal employees' retirement fund.[6] See *Pineman* v. *Oechslin*, supra, 195 Conn. 410–

[3] General Statutes § 7-450 provides: "Any municipality or subdivision thereof may, by ordinance, establish pension and retirement systems for its officers and employees and their beneficiaries, *or amend any special act concerning its pension or retirement system, toward the maintenance in sound condition of a retirement fund or funds*, provided the rights or benefits granted to any individual under any municipal retirement or pension system shall not be diminished or eliminated. The legislative body of any such municipality, by a two-thirds vote, may provide for pensions to persons, including the survivors' benefits for widows of such persons, not included in such retirement or pension system." (Emphasis added.)

[4] Chapter III, § 10 et seq., of the Hartford charter establishes the procedure for adopting ordinances, i.e., first reading and publication, public hearing, passage by the city council and approval by the mayor.

[5] See footnote 3.

[6] This is consistent with the purpose of § 7-450, which provides that the city council may "*amend any special act concerning its pension or retirement system, toward the maintenance in sound condition of a retirement fund*

11. In sum, the commission was without authority to confer additional benefits through the pension manual.[7]

In the alternative, the plaintiffs argue that if approval of the city council is in fact required, the contested representation that was made in the pension manual was ratified by the city council. The plaintiffs argue that the contract was ratified because the city council was involved in the funding, production and distribution of the pension manual. The plaintiffs also argue that the pension manual was ratified by the city because the first page of the manual contains a letter signed by the treasurer of the city of Hartford, and because that letter contains the city seal. We disagree.

"It is a general rule that whatever acts public officials may do or authorize to be done in the first instance may subsequently be adopted or ratified by them with the same effect as though properly done under previous authority." 10A E. McQuillin, supra, § 29.104, p. 60. However, "no ratification or estoppel can make lawful a municipal contract which is beyond the scope of the

___

*or funds* . . . ." (Emphasis added.) See footnote 3. Accordingly, General Statutes § 7-450a (b) requires that the legislative body of a municipality receive a "qualified cost estimate" from an "enrolled actuary" before adopting an ordinance or act altering its municipal employees' retirement fund. If amendments to the pension scheme could be made through a pension manual, based on implied contract principles, then the statutory requirement of fiscal responsibility would be undermined.

[7] The commission was created in chapter XVII, § 2, of the Hartford charter, which provides in part that the "[t]he commission shall administer the municipal employees' retirement fund hereinafter established." Chapter XVII, § 5, of the Hartford charter provides, among other things, that the "commission shall have power to make rules and regulations for the purpose of carrying out the provisions of this chapter." The plaintiffs argue that in order to carry out its obligation to administer the municipal employees' retirement fund, the commission must, by necessity, interpret the charter and confer pension benefits upon eligible recipients. We disagree. The fact that the commission has authority to administer the city's municipal employees' retirement fund does not give it authority to amend the pension plan and circumvent the city council's authority to amend the municipal employees' retirement fund.

corporate powers, *or which is not executed in compliance with mandatory conditions prescribed in the charter or statutes . . . .*" (Emphasis added.) Id., § 29.104.30, p. 67. Therefore, ratification of the contested term in the pension manual had to be enacted by the city council as an ordinance or resolution in compliance with the charter provisions in order to be binding on the city. Cf. *Keeney* v. *Old Saybrook,* supra, 237 Conn. 149. This was not done.[8]

B

The next issue we address is whether the city's failure to include lump sum payments for accrued sick leave in the plaintiffs' final pension calculations was a violation of their due process rights under the fourteenth amendment to the United States constitution. The plaintiffs claim that they have a property interest in their pension benefits, and that the defendants have arbitrarily denied them this benefit.

In *Pineman* v. *Oechslin,* supra, 195 Conn. 416–17, referring to the state employees retirement system, we observed that "the statutory pension scheme establishes a property interest on behalf of all state employees in the existing retirement fund, which interest is entitled to protection from arbitrary legislative action

---

[8] Although we affirm the decision of the trial court on this issue, we do so for different reasons. The trial court, relying on our statements in *Pineman* v. *Oechslin,* supra, 195 Conn. 410–11, stated: "The Court concludes that as a matter of law, the pension manual, when read as a whole, as it must be, cannot be reasonably construed as being a clear, unambiguous expression of legislative intent to create contractual rights in pension benefits." The trial court, however, ultimately concluded that "there was no evidence that the Pension Commission had any power to create pension benefits. . . . There is no statute, charter provision or ordinance which gives the Pension Commission the power to create or grant pension benefits." Our holding today is premised on the fact that the city council had the sole authority to grant additional pension benefits. Even if the pension manual clearly provided for such a benefit, the commission was not empowered to confer additional benefits.

under the due process provisions of our state and federal constitutions." As we indicated previously, the plaintiffs, however, were never entitled to this benefit under the city charter or under the ordinances. "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has *already* acquired in *specific* benefits." (Emphasis added.) *Board of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 576, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). "[A] unilateral expectation of benefits is simply not enough to create a constitutionally protected property interest within the meaning of the fourteenth amendment." *Barde* v. *Board of Trustees*, 207 Conn. 59, 65, 539 A.2d 1000 (1988); see also *Bartlett* v. *Krause*, 209 Conn. 352, 366, 551 A.2d 710 (1988); *Millard* v. *Connecticut Personnel Appeal Board*, 170 Conn. 541, 546, 368 A.2d 121 (1976). Because the plaintiffs do not have a property interest in the claimed benefit, as discussed in part I A of this opinion, they are not entitled to due process. Therefore, the trial court properly denied this due process claim of the plaintiffs.

## C

We next address the plaintiffs' claim that they were deprived of their statutory rights to an increase in retirement benefits pursuant to General Statutes § 31-76k.[9] Pursuant to rule 10 (3) of the personnel rules and regulations,[10] which states the city's policy for all employees,

---

[9] General Statutes § 31-76k provides: "*If an employer policy or collective bargaining agreement* provides for the payment of accrued fringe benefits upon termination, including but not limited to paid vacations, holidays, sick days and earned leave, and an employee is terminated without having received such accrued fringe benefits, such employee shall be compensated for such accrued fringe benefits exclusive of normal pension benefits in the form of wages in accordance with such agreement or policy but in no case less than the earned average rate for the accrual period pursuant to sections 31-71a to 31-71i, inclusive." (Emphasis added.)

[10] Although these rules are created by the Hartford personnel board, they are approved by the city council.

the plaintiffs each received lump sum payments equal to 50 percent of their accrued sick time when they retired. The plaintiffs claim that they are entitled to additional sick leave benefits that were given to the bargaining unit members of the Hartford police union pursuant to the 1987–1990 collective bargaining agreement (agreement). The agreement furnishes the bargaining unit police officers with increased retirement benefits calculated on the basis of "a one-time only increase of accumulated days equal to one (1) additional day for each day over 120 accumulated sick days calculated as of October 31, 1987." Collective Bargaining Agreement (1987–1990) § 5.3.

"[Section] § 31-76k provides for the collection of certain [accrued] fringe benefits, including [sick days] where (1) an employer policy provides for the payment of accrued benefits upon termination, or (2) such payments are provided for by a collective bargaining agreement." *Fulco* v. *Norwich Roman Catholic Diocesan Corp.*, 27 Conn. App. 800, 806, 609 A.2d 1034 (1992), appeal dismissed, 226 Conn. 404, 627 A.2d 931 (1993). Because the plaintiffs were not members of the collective bargaining unit, we must determine whether there existed an "employer policy" entitling them to payment of accrued benefits upon termination.[11] "[T]he term 'employer policy' relates not to the employer's intent with regard to a single employee, but to its intentions regarding either its employees generally or discrete classes of employees." Id. The plaintiffs' claims have no merit under § 31-76k because lump sum sick leave benefits for accrued sick time have already been paid to

---

[11] The plaintiffs also argue that they are entitled to this additional benefit because they supervised the "Lost Time Management Program." That program consists of guidelines that are used by the supervisory police officers to curtail absenteeism. The plaintiffs, as supervisors, administered the program. The plaintiffs argue that their supervision of the program entitles them to the same additional lump sum sick benefits as the collective bargaining unit police officers receive. There is no merit to this argument.

the plaintiffs pursuant to rule 10 (3), which is consistent with the city's established policy. The plaintiffs are essentially claiming that they are entitled to additional retirement benefits based on accrued sick leave because the bargaining unit employees received those benefits. The city's policy, however, was to grant different accrued sick leave benefits to collective bargaining unit police officers, according to the agreement, and nonbargaining unit police officers. The trial court properly denied the plaintiffs' claims under § 31-76k.

## D

The plaintiffs next argue that the defendants violated their rights to equal protection of the laws under the state and federal constitutions by providing additional retirement benefits to collective bargaining unit members of the Hartford police union, while denying that same benefit to the plaintiffs who were nonbargaining Hartford police supervisory personnel. We find no merit to this claim.[12]

As we have previously indicated, the agreement furnishes the bargaining unit police officers with increased

[12] The plaintiffs also argue that the "public emoluments or privileges" clause of article first, § 1, of the Connecticut constitution requires that the defendants give the plaintiffs the same additional sick leave benefits that were given to members of the collective bargaining unit. Article first, § 1, of the Connecticut constitution provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community." The plaintiffs rely on *Warner* v. *Gabb*, 139 Conn. 310, 93 A.2d 487 (1952), in support of this proposition. In *Warner*, this court stated: "[I]f legislation directs the granting of an emolument or privilege to an individual or class without any purpose, expressed or apparent, to serve the public welfare thereby, the courts have a duty to declare such legislation unconstitutional." Id., 313. Even if the public emoluments clause has been violated, and we do not agree that it has been, we fail to see what benefit that would give the plaintiffs. It would merely invalidate the benefit given to the collective bargaining unit members. Nevertheless, as we indicate in this opinion, there exists a legitimate public purpose for the distinction made by the city between nonbargaining and bargaining unit personnel.

retirement benefits calculated on the basis of "a one-time only increase of accumulated days equal to one (1) additional day for each day over 120 accumulated sick days calculated as of October 31, 1987." Collective Bargaining Agreement (1987–1990) § 5.3. Because the city's different treatment of collective bargaining and nonbargaining personnel does not create a suspect classification or infringe on a fundamental constitutional right, the plaintiffs must establish that the different treatment has no rational basis in order to mount a successful equal protection challenge. See *State Management Assn. of Connecticut, Inc.* v. *O'Neill*, 204 Conn. 746, 753–54, 529 A.2d 1276 (1987).

There exists a legitimate public purpose for the different treatment of the plaintiffs as nonbargaining supervisory personnel of the Hartford police. As a consequence of a collective bargaining agreement, supervisory or managerial personnel do not necessarily receive the same benefits as the collective bargaining unit members. This court has noted that "managers have the responsibility to decide major personnel decisions and formulate agency policies, and therefore managers are differently situated than nonmanagerial employees and supervisors. These responsibilities give managers prestige, autonomy and managerial authority that is not enjoyed by other employees. On the other hand, because managers administer collective bargaining agreements . . . they have no bargaining or organizational rights." (Citation omitted.) *Dept. of Administrative Services* v. *Employees' Review Board*, 226 Conn. 670, 683–84, 628 A.2d 957 (1993). In light of the different functions that management and collective bargaining employees perform, the trial court properly determined that there exists a legitimate public purpose for treating the plaintiffs differently from the collective bargaining unit police officers. Thus, the plaintiffs were not deprived of the equal protection of the laws under the

state or federal constitutions.

The plaintiffs also claim that the city's refusal to grant them additional sick leave benefits constitutes a violation of their due process rights under the fourteenth amendment to the United States constitution. The plaintiffs claim that they have established a property interest in their pension benefits, and that the defendants have arbitrarily chosen to exclude them from receiving the additional sick leave benefits. The plaintiffs, however, were never entitled to this benefit under the city charter or ordinances. See part I B of this opinion. Accordingly, the trial court properly denied the plaintiffs' due process claims on this issue.

II

We now address the claim of Fennell and Williams[13] that their constitutional rights were violated when the city refused to calculate their credit for military service time at the higher percentage afforded to bargaining unit personnel. Under the agreement, bargaining unit police officers receive a 2.65 percent credit toward their pension benefits for each year of military service time. Fennell and Williams, as nonbargaining personnel, received 2 percent for each year of military service time toward their pension calculations.[14] Fennell and Williams claim that this practice violated their right to equal protection of the laws under the state and federal constitutions, and their due process rights under the fourteenth amendment to the United States constitution. We are unpersuaded with respect to these constitutional arguments for the same reasons stated previously in part I D of this opinion

[13] Bracken did not seek military service credits.

[14] See Hartford Charter, c. XVII, § 3 (bi) (III) (2) and Hartford Ordinance No. 37-85 (November 25, 1985) (amending said charter provision). The percentage, for nonbargaining personnel, depends on the number of years of city service.

## III

In their cross appeal, the defendants argue that the trial court improperly denied both their motion to set aside the jury's verdict and their motion for judgment notwithstanding the verdict regarding the defendants' failure to include partial years of military service in Fennell's and Williams' pension calculations.[15] Initially, pursuant to the city charter,[16] Fennell purchased one year and six months of military service credit and Williams purchased two years and five months of military service credit. Subsequently, the commission rejected Fennell's and Williams' purchase of a partial year of military service and reimbursed them for that portion of their purchases. We conclude, as a matter of law,

[15] We agree with the defendants that the issue of whether the charter allows Fennell and Williams to purchase a partial year of military service is a question of law for the trial court and should not have been submitted to the jury. In addition to concluding that Fennell and Williams were "entitled to credit of partial years of military service toward their pension benefits," the trial court also concluded that to deny Fennell and Williams credit for partial years of military service would violate their rights to due process. Although we conclude that a partial year of military service should be included in an employee's pension calculations to the extent that it will affect his or her actual benefits, we fail to see how the plaintiffs are being deprived of due process. Accordingly, the holding of the trial court as to this issue was improper.

[16] The city charter has been periodically amended. Because no party challenges the validity of the amendments, we utilize the current language of the charter that is applicable to Fennell and Williams, who retired on April 25, 1989, and October 7, 1988, respectively.

Chapter XVII, § 3 (bi) (III) (5) of the Hartford charter provides: "An employee may purchase up to four (4) years of military service time for service in the Armed Forces of the United States for periods of service, any of which occurred during the periods set forth in Section 27-103 of the General Statutes of Connecticut, at the rate payable at the time of entry into city service, with interest at the rate of seven (7) percent per annum. The period of such service for which the employee receives credit shall be counted for the purpose of computing the amount of his or her retirement allowance provided such employee shall have completed ten (10) years of continuous service or fifteen (15) years of active aggregate service with the City of Hartford or shall be retired prior thereto, due to disability incurred in the course of his or her employment." See also footnote 17.

based upon our interpretation of the Hartford charter, that Fennell and Williams were entitled to have a partial year of military service credit included in their pension calculations to the extent that it increases their total number of whole years of service.

"The interpretation of statutes presents a question of law . . . which is ultimately for the court to decide." (Citation omitted; internal quotation marks omitted.) *University of Connecticut* v. *Freedom of Information Commission*, 217 Conn. 322, 328, 585 A.2d 690 (1991). Likewise, the interpretation of a charter or ordinance is a question of law. "In construing a city charter, the rules of statutory construction generally apply. . . . In arriving at the intention of the framers of the charter the whole and every part of the instrument must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws." (Citations omitted; internal quotation marks omitted.) *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 423–24.

Consequently, we must examine the charter provisions regarding the pension scheme in general. The operative provision of the charter with respect to the purchase of military service credits provides in relevant part: "An employee may purchase up to four (4) years of military service time for service in the Armed Forces of the United States for periods of service . . . . The period of such service for which the employee receives credit *shall be counted for the purpose of computing the amount of his or her retirement allowance . . . .*" (Emphasis added.) Hartford Charter, c. XVII, § 3 (bi) (III) (5). We construe this provision to include within an employee's pension calculations any partial year of military service that the employee has purchased. The actual amount of an employee's pension benefits, however, is determined by the number of the employee's

whole years of service: "Service retirements for those employees hired before July 1, 1984, will be based upon 2.65 percent of final average pay for each *whole year of service . . . .*" (Emphasis added.) Hartford Charter, c. XVII, § 3 (bi) (III) (2).

Construing the pension scheme as a whole, we conclude, as the defendants concede in their brief to this court, that an employee may *purchase* whole and partial years of military service, not to exceed four years, that *"shall be counted"* or *"shall be credited"*[17] in his or her pension calculations if it affects an employee's pension benefit. A partial year of military service, however, is to be included in an employee's pension calculations to the extent that it increases the employee's number of whole years of service. For example, an employee who has twenty-one and one-half years of service in the police department and who purchases two and one-half years of military service time should receive a pension on the basis of twenty-four years of service. On the other hand, if that employee purchases two and one-quarter years of military service he would receive a pension calculated on the basis of twenty-three years of service because his actual pension benefit is determined by his number of whole years of service.

Although our examination of the record indicates that the plaintiffs may not have been accorded the proper calculation of their pension benefits, as previously set forth, we recognize, as the trial court did, that such a determination is better made by the commission in the

---

[17] The defendants concede that chapter XVII, § 3 (w) of the Hartford charter also allows employees to purchase service credits based on their military service. That section provides in relevant part: "Any member who is not employed by the board of education and is not represented by a bargaining unit, who, prior to his or her date of employment with the City of Hartford served in any branch of the armed forces of the United States . . . *shall be credited* with the length of such services . . . to the extent that he or she makes contributions to said fund for all or any part of such service, not to exceed four (4) years. . . ." (Emphasis added.)

first instance. We also recognize that the plaintiffs have been reimbursed for the partial years of military service that they sought to have considered, which we now conclude they are entitled to have included in their pension calculations to the extent that such a partial year, when added to a partial year of actual service, may constitute a whole year of service. Thus, the plaintiffs ought to be afforded the opportunity to repurchase those partial years, and if they elect to do so, the commission ought to be afforded an opportunity to recalculate their benefits based on that repurchase. Although the remand by the trial court was correct, it should have ordered that partial years of military service purchased by Fennell and Williams are to be included in their pension calculations subject to the qualification that their actual pension benefits be determined by their number of whole years of service.

The judgment is affirmed except that with respect to the cross appeal, the judgment is vacated and the case is remanded for further proceedings with respect to the issue of credit for military service time in accordance with the preceding paragraph of this opinion.

In this opinion the other justices concurred.

