[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: (#109) DEFENDANT'S MOTION TO STRIKE
The plaintiff, Deena Backert was formerly employed by the BIC Corporation as a human resource assistant. On January 26, 2000 her employment was terminated by BIC and the plaintiff subsequently commenced this action.
The plaintiff's amended complaint contains four counts: wrongful termination, defamation, failure to pay wages and benefits, and a CUTPA violation.
The defendants have moved the court to strike each and every one of the four counts contained in the plaintiff's amended complaint claiming that each fails to allege sufficient facts upon which relief may be granted.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted. . . . If facts provable in the CT Page 10012 complaint would support a cause of action, the motion to strike must be denied." Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269,270-71, 709 A.2d 558 (1999). "A motion to strike admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Faulkner v. United Technologies Corp.,240 Conn. 576, 588, 693 A.2d 293 (1997). "The court must construe the facts in the complaint most favorably to the plaintiff." Id., 580.
A. Count One — Wrongful Termination
"In Sheets v. Teddy's Frosted Foods, Inc., [179 Conn. 471, 480,427 A.2d 385 (1980)], in an effort to balance the competing interests of employers and employees, we recognized a public policy limitation on the traditional employment at-will doctrine. . . . In Sheets, we sanctioned a common law cause of action for wrongful discharge in situations in which the reason for the discharge involved impropriety . . . derived from some important violation of public policy. Sheets v. Teddy's FrostedFoods, Inc., supra [475]." (Citations omitted; internal quotation marks omitted.) Emerick v. Kuhn, 52 Conn. App. 724, 737, 737 A.2d 456 (1999). "[T]he public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one that is only to be invoked when the reason for [the employee's] discharge . . . involves impropriety derived from some important violation of public policy." (Citation omitted.) Id., 737. "Under the exception, the employee has the burden of pleading and proving that his dismissal occurred for a reason violating public policy. The employer is allowed, in ordinary circumstances, to make personnel decisions without fear of incurring civil liability. Employee job security, however, is protected against employer actions that contravene public policy." Morris v. HartfordCourant Co., 200 Conn. 676, 679, 513 A.2d 66 (1986). "Because of the vagueness that inheres in the concept of public policy . . . we must make a case by case analysis of employee claims in such cases." (Citations omitted.) Thibodeau v. Design Group One Architects, LLC, 64 Conn. App. 573,579, 781 A.2d 363 (2001). The cases in which the court has found public policy violations provide a basis to determine its boundaries. See Sheetsv. Teddy's Frosted Food, Inc., supra, 179 Conn. 471 (defendant discharged for calling attention to employer's violations of Connecticut Uniform Food, Drug and Cosmetic Act.); Burnham v. Karl Gelb, P.C., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 537069 (January 9, 1995, Blue, J.) (discharge of employee in retaliation for reporting OSHA and civil rights violations violates public policy);Weeks v. Office of Urban Affairs, Superior Court, judicial district of New Haven at New Haven, Docket No. 339298 (September 13, 1994, Martin,J.) (discharge of employee in retaliation of employee's reporting of defendants' inaccurate figures to state and federal agencies are a violation of public policy). CT Page 10013
The plaintiff alleges in her amended complaint that she was terminated because her supervisor did not want to endure a deposition in which he would be questioned about an alleged relationship with the plaintiff. While this reason may or may not be factually correct, it does not constitute one which involves public policy. For that reason, the motion to strike count one is granted.
B. Count Two Self-Defamation
The plaintiff in this case has alleged that she was forced to verbally publicize to potential employers the fact that she was terminated and the reason stated in the defendants' records. Further, the plaintiff alleges that the defendants placed documents in her personnel file which contained untrue allegations of incompetence which the defendants knew, expressly or impliedly, the plaintiff would be required to publish in order to seek employment.
"[D]efamation is actionable per se if it charges improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in his profession or business (1987). Moriarty v. Lippe, 162 Conn. 371, 384, 294 A.2d 326
(1972). "In order to be defamatory a false statement must be communicated to some one other than the plaintiff. Generally, there is no publication where the defendant communicates the slanderous statement directly to the plaintiff who then communicates it to a third party. . . . Some Connecticut courts have recognized a narrow exception to this rule known as the doctrine of `self publication.'" Bremseth v. Hartford Hospital, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 531168 (July 12, 1995, Wagner, J.).
In Spain v. Blue Cross Blue Shield of Connecticut, 2 CSCR 424 (March 9, 1987, Flanagan, J.), "the court found that under this exception the requirement of publication is satisfied where the plaintiff is compelled to publish a slanderous statement to a third party if it was reasonably foreseeable to the defendant that the plaintiff would be compelled to do so." Id.
In order to state a cause of action for self-defamation "a plaintiff would not have to show that the alleged defamatory statement was communicated to a third party or published, if plaintiff alleges the existence of a strong compulsion upon the defamed person to disclose the defamatory statement to third parties and that such compulsion was reasonably foreseeable by the defendant." (Internal quotation marks omitted.) Gaudio v. Griffin Health Services, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 035730 (December 19, CT Page 10014 1997, Sequino, J.), aff'd on other grounds, 249 Conn. 523, 733 A.2d 197
(1999).
The defamatory statements in the cases in which self-publication has been accepted illustrate situations when it is reasonably foreseeable that a plaintiff will have a strong compulsion to disclose the statements. The leading case on self-publication is Gaudio v. Griffin Health Services, supra, Superior Court, Docket No. 035730. In Gaudio, the plaintiff was a security guard for the defendants and had an interest in making this profession his career. The plaintiff was terminated after an incident involving the restraint of a patient. The plaintiff's termination letter contained the statement "Your [sic] displayed bad judgment and did not follow established procedures regarding restraint of a patient." The court ruled this statement was defamatory and that the plaintiff's interest in the specialized fields of law enforcement and security allowed the jury to infer that it was reasonably foreseeable that the plaintiff would publish the defamatory words contained in the termination letter. The court stated, "it is difficult to see how it could be said that a person interested in this particular line of work would not be compelled to tell prospective employers about the reasons for his termination at a prior security job. The specialized nature of the field the plaintiff worked in allowed the jury to infer that this was reasonably foreseeable to the defendant." Id.
The plaintiff has failed to allege any defamatory statements made by the defendants. Further, the doctrine of self-publication is inapplicable in this case as it is not reasonablely foreseeable that the plaintiff, in her capacity as a human resource assistant, would be strongly compelled to publish the allegations of incompetence to a prospective employer. The plaintiff has alleged no statements made by the defendants concerning lack of skill or integrity in her profession.
The plaintiff additionally contends that the defendants defamed her by "papering" her employment file with untrue allegations. She was allegedly reported to have posted a job listing with incorrect information and to have given false information to an employee about an eligible position for which he tested. She also claims that she was given four unwarranted negative performance reviews. These are not the type of defamatory statements which inherently carry with them a lack of skill or integrity in her profession which is essential to support a cause of action for self-defamation. Neither are any of them facts or comments which the plaintiff was compelled to tell future prospective employers. For those reasons, the motion to strike count two is granted.
C. Count Three — Failure to Pay Wages and Benefits
CT Page 10015
The plaintiff alleges that the defendants failed to compensate her for vacation benefits she obtained as of the date of her termination and such failure is a violation of Connecticut General Statutes § 31-72. General Statutes § 31-72 provides, in pertinent part: "When any employer fails . . . to compensate an employee in accordance with section31-76k . . . such employee or labor organization may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer for payment of wages . . . shall be no defense to such action." General Statutes § 31-76k provides, in pertinent part: "If an employer policy or collective bargaining agreement provides for the payment of accrued fringe benefits upon termination, including but not limited to paid vacations, holidays, sick days and earned leave, and an employee is terminated without having received such accrued benefits, such employee shall be compensated for such accrued fringe benefits. . . ."
The defendants counter that the plaintiff has failed to allege that the defendants had a policy of paying vacation pay to its employees upon termination. Instead, the defendants argue that the plaintiff has alleged a verbal agreement with the head of human resources that she would receive her vacation pay she had earned.
The statutory language of § 31-76k requires a plaintiff to allege the existence of an employer policy or collective bargaining unit to demonstrate a cause of action. See Fulco v. Norwich Roman CatholicDiocesan Corp., 27 Conn. App. 800, 806, 609 A.2d 1034 (1992). "[T]he term "employer policy' relates not to the employer's intent with regard to a single employee, but to its intentions regarding either its employees generally or discrete classes of employees." Fennell v. City ofHartford, 238 Conn. 809, 821, 681 A.2d 934 (1996). "[A] policy, by definition, is a `definite course or method of action selected from among alternatives . . . to guide and determine present and future decisions.'"(Citations omitted.) Fulco v. Norwich Roman Catholic DiocesanCorp., supra, 27 Conn. App. 806.
The plaintiff has failed to allege the existence of any employer policy or collective bargaining agreement which authorizes the payment of vacation time upon an employee's termination. The plaintiff alleges only a verbal agreement with the defendants' head of human resources which seems to indicate an agreement with a single employee, not a policy for all employees. For the foregoing reasons the motion to strike count three is granted.
D. Count four — Connecticut Unfair Trade Practices Act (CUTPA)
CT Page 10016
The plaintiff alleges that the defendants advised her that it was their regular business practice to refuse to compensate employees for accumulated vacation benefits upon termination unless the employee signed a release in favor of the defendants for all claims. This practice, the plaintiff contends, is unfair and deceptive and in violation of General Statutes § 42-110 (b)[1]. CUTPA provides, in pertinent part, "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a).
The defendants argue that claims based on employer-employee relationships are outside the purview of CUTPA and that some sort of consumer relationship must exist with the party alleged to have caused harm.
CUTPA does not apply to disputes arising under the employee/employer relationship since the employee/employer relationship does not fall within the definition of trade or commerce for purposes of an action under CUTPA. Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 670,613 A.2d 838 (1992). "[A] claimant under CUTPA must possess at least some type of consumer relationship with the party who allegedly caused harm to him or to her." Jackson v. R.G. Whipple, Inc., 225 Conn. 705, 727,627 A.2d 374 (1993). "[A]lthough an employer may engage employees for the purpose of promoting trade or commerce, the actual employment relationship is not itself trade or commerce for the purposes of CUTPA." Banerjee v.Roberts, 641 F. Sup. 1093, 1108 (D.Conn. 1986).
The court finds that the plaintiff cannot state a cause of action pursuant to CUTPA, because the claim is based upon an employee/employer relationship and is, therefore, outside the purview of CUTPA. For that reason the motion to strike count four of the plaintiff's amended complaint is granted.
By the Court,
Joseph W. Doherty, Judge