## ROBERT KENNY *v.* TOWN OF ORANGE*

Superior Court, Judicial District of New Haven
File No. CV-06-5006412-S

Memorandum filed January 25, 2010

*John M. Gesmonde,* for the plaintiff.

*Michael J. Dorney,* for the defendant.

HON. WILLIAM L. HADDEN, JR., JUDGE TRIAL REF-EREE. This is a one count civil action brought by the plaintiff, Robert Kenny, a retired former employee of the defendant, against the defendant, the town of Orange, seeking an order of this court directing the defendant to commence payment of the plaintiff's pension, including

---

* Affirmed. *Kenny* v. *Orange,* 126 Conn. App. 351, 12 A.3d 1008 (2011).

compensation for the loss of pension benefits, effective on May 5, 2003, or alternatively, an order of this court directing the defendant to commence payment of the plaintiff's pension, including compensation for the loss of pension benefits, effective on March 1, 2006.

The complaint alleges, in substance, that the plaintiff was hired by the defendant as a police officer on February 18, 1986, and that he retired seventeen years later on May 5, 2003. At the time of his retirement, the plaintiff held the rank of assistant chief of the Orange police department. The plaintiff claims that pursuant to a January 1, 1987 town of Orange police pension plan (exhibit four), he is entitled to be paid the benefits as requested in his complaint. This claim is based on § 6.1 of exhibit four, which provides that when he terminated his employment within five years of his normal retirement date of March 1, 2006, he was eligible to receive a vested retirement income benefit commencing on his normal retirement date or he could have elected to commence such payment as early as the first day of any month following the date of such election.

The defendant claims that the plaintiff's pension rights are not controlled by the January 1, 1987 police pension plan but rather are determined by the language of the town of Orange police pension and retirement plan, December 31, 2000 restatement, and a memorandum of understanding and appendix attached to both the 1997-2003 and 2003-2007 collective bargaining agreements between the town and the police union. The defendant also claims that the plaintiff cannot be awarded either of his alternate prayers for relief whether the 1987 plan or the 2000 plan is controlling because the definition of normal retirement date under both plans is the same: the earlier of age fifty-five (March, 2019) or the date when the plaintiff completes either twenty-five years of credited service (1987 plan) or twenty years of credited service (2000 plan). Because

the plaintiff retired after seventeen years of service, the defendant claims that he cannot achieve either twenty or twenty-five years of credited service, and his normal retirement date under both pension plans is his fifty-fifth birthday, February 12, 2019, and his benefits will commence on the first day of the month following his fifty-fifth birthday.

This court heard this matter in a court trial on September 17, 2009. The parties have submitted appropriate posttrial briefs, and the plaintiff has filed a reply brief.

The court finds the following facts and reaches the following conclusions. The plaintiff was born on February 12, 1964. He will be fifty-five years of age on February 12, 2019. He was hired by the defendant's police department as a police officer on February 18, 1986, and resigned on May 5, 2003. At the time of his resignation, the plaintiff was the assistant chief of police. His credited service with the defendant was seventeen years, two months and seventeen days.

Since 1962, the defendant has provided retirement benefits to its sworn police department employees by way of a pension and retirement plan. The initial 1962 plan was amended in 1981, 1987, 2000 and 2003. The chief and the assistant chiefs are entitled to the same benefits as the members of the police union.

The plaintiff states in his posttrial brief that his "only claim before this court is that he is entitled to vested retirement income in accordance with [§] 6" of the January 1, 1987 pension and retirement plan. This claim is made under a provision of the 1987 police pension plan, which is referred to by the parties as "early retirement." Under § 6.1 of the 1987 plan, an employee who has completed fifteen years of credited service may, at any time within five years of his normal retirement date, elect to receive retirement income on the first day of any month following the date the election is made.

There is no evidence that the plaintiff has ever made such an election. Normal retirement date is defined in § 2.18 of the 1987 plan, for benefit eligibility and vesting purposes, as being the day the retiree becomes fifty-five or, if earlier, the day on which he completes twenty-five years of credited service. The plaintiff is claiming that his retirement benefits are governed by the 1987 plan. If that plan governs, then because the plaintiff had only seventeen years of employment, he would not be within five years of his normal retirement date, which is the earlier of his fifty-fifth birthday or twenty-five years of credited service, and he would not be entitled to benefits until his fifty-fifth birthday.

However, the court finds that the plaintiff's pension rights are not controlled by the 1987 pension plan, but rather by the town of Orange police pension and retirement plan, December 31, 2000 restatement. This plan was approved by the town and the union on April 11, 2000, and it included some changes retroactive to July 1, 1997, and pension changes applicable to those employees who retired after July 1, 1999.

The December 31, 2000 restatement pension plan was negotiated by representatives of the town and the union. Also involved were attorney Floyd Dugas on behalf of the town and attorney John M. Gesmonde, representing the union. Negotiations took several years and culminated in the signing of the plan on April 11, 2000, by the town and the union. The pension plan restated the 1987 pension plan and then made several changes. Some of these changes could be construed as favorable to the union and some favorable to the town. One change was to reduce the credited service portion of the normal retirement date definition from twenty-five years to twenty years. In view of the reduction from twenty-five years to twenty years with respect to normal retirement date, the right to take an early retirement was deleted.

The people involved in the negotiations that led up to the December 31, 2000 restatement police pension were also negotiating a collective bargaining agreement covering all employees of the town, which also included provisions relating to the police pension. There was concern that there might be conflicts between the December 31, 2000 restatement police pension plan, the provisions of the collective bargaining agreement and one or more pension plan documents. In order to avoid these conflicts, the negotiators agreed on exactly what the benefits of the December 31, 2000 restatement police pension were. Gesmonde prepared a chart covering all of the provisions of the December 31, 2000 restatement police pension, referred to thereafter as the "Gesmonde chart," and the parties signed a "memorandum of understanding" that stated, in substance, that in the event of a conflict between the terms of the collective bargaining agreement and one or more pension plan documents, or any ambiguity in any such document, then the summary in the Gesmonde chart would be controlling. One of the provisions of the chart is that vested pensions are paid starting on the normal retirement date, which is the earlier of fifty-five years of age or twenty years of credited service. Because the years of service required in order to be eligible to retire had been reduced to twenty years, the parties agreed that the right to early retirement would be deleted. The Gesmonde chart states that early retirement is "not applicable." The "memorandum of understanding" and the chart were signed by the first selectman of Orange and the president of the union and were incorporated and made part of the December 31, 2000 restatement.

In addition to the Gesmonde chart, the preamble to the plan and article VI, § 6.1, provide that the plan is effective as of December 31, 2000, and that there are no early retirement benefits under this plan for participants who retire after July 1, 1999. Article VII, § 7.5, of the

plan provides that a "monthly deferred retirement benefit shall be paid to an eligible participant commencing as of his normal retirement date." As indicated previously, normal retirement date is defined as the earlier of twenty years of credited service or the fifty-fifth birthday of the participant.

Because of the delays inherent in the preparation and execution of the amended collective bargaining agreement after there was a binding agreement to amend the pension plan, the actual formal retroactive approval of the December 31, 2000 restatement of the pension plan occurred on September 11, 2003. However, it is clear that on April 11, 2000, the new collective bargaining agreement was agreed to by the town and the union, and that it contained some changes effective on July 1, 1997, and certain changes to the pension plan effective with respect to any employees of the police department who retire after July 1, 1999. Included in the pension plan approved on April 11, 2000, was the memorandum of understanding and the Gesmonde chart. The plan was approved by a vote of the Orange board of selectmen and was submitted to the Internal Revenue Service for approval shortly after April 11, 2000. In fact, three officers of the police department and Chief Edward Delaney retired after July 1, 1999, and before the May 5, 2003 retirement of the plaintiff. All retired under the provisions contained in the December 31, 2000 restatement plan.

The evidence also discloses that at meetings of the board of police commissioners on July 25, 2002, when Mark Greco was appointed as assistant chief of police, and on November 22, 2002, when the plaintiff was appointed assistant chief of police, because of the death of Greco, that included in the "benefits for assistant chief of police" under retirement accumulation were the increased benefits as provided in the December 31, 2000 restatement police pension plan.

The plaintiff in his complaint and in his brief refers to the fact that on August 11, 2003, the town forwarded to him a "deferred vested benefit statement" that had been received from Mass Mutual, stating that his normal retirement date was March 1, 2006, and that he would be receiving a monthly benefit as of that date. This error came to the attention of the first selectman, Mass Mutual was notified and a "revised deferred benefit statement" was sent by Mass Mutual on September 14, 2004, stating that the plaintiff's correct normal retirement date was March 1, 2019, which would be the first of the month following his fifty-fifth birthday. The plaintiff has not claimed that the town is bound by the initial letter from Mass Mutual, which was forwarded to the plaintiff by the town director of finance and administration, under a theory of implied contract or estoppel. However, because the incident is mentioned in the complaint and in the plaintiff's brief, the court refers to a case holding that such action ordinarily cannot bind the town. See *Fennell* v. *Hartford*, 238 Conn. 809, 696 A.2d 934 (1996).

For the reasons previously stated, the court finds that the plaintiff, having retired in 2003 when he had seventeen plus years of credited service, will reach his normal retirement date on his fifty-fifth birthday on February 12, 2019, and will be entitled to receive vested pension benefits commencing on March 1, 2019.

Judgment may enter in favor of the defendant.