******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SUMMERHILL, LLC *v.* CITY OF MERIDEN ET AL.
(AC 37667)

Alvord, Keller and Flynn, Js.

*Argued November 19, 2015—officially released January 19, 2016*

(Appeal from Superior Court, judicial district of Hartford, Complex Litigation Docket, Sheridan, J.)

*Dominic J. Aprile*, for the appellant (plaintiff).

*Jody N. Cappello*, with whom was *Sara J. Ray*, for the appellees (defendants).

*Opinion*

ALVORD, J. The plaintiff, Summerhill, LLC, appeals from the judgment of the trial court granting the motion for a directed verdict in favor of the defendant Lawrence J. Kendzior.[1] The plaintiff argues that the trial court erred by granting a directed verdict in favor of the defendant as to the claims of breach of contract and breach of the covenant of good faith and fair dealing because the court "fail[ed] to give due weight to the evidence of the agreement between plaintiff and defendant." We affirm the judgment of the trial court.[2]

The following facts and procedural history are relevant to this appeal. The plaintiff owned 12.44 acres of land at 39 Sams Road in Meriden. The plaintiff was restricted from developing the property because the city had designated it as part of its ridgeline protection zone.[3] The plaintiff, through its managing member and other associated companies, has been in litigation with the city over this piece of property since at least 1994. *Carabetta* v. *Planning Commission*, Superior Court, judicial district of New Haven, Docket No. CV-03-0285713 (December 8, 2005).

On June 5, 2007, the plaintiff's prior counsel, Genevieve Salvatore, initiated a meeting with the defendant, who was employed as city manager. Both sides agree that Salvatore discussed hiring a geologist to try to prove to the city that the plaintiff's property should not be included within the ridgeline protection zone. The parties disagree as to whether this meeting resulted in a contract. The plaintiff claims that the meeting resulted in two oral contracts: one with the city and another with the defendant individually. The defendant claims that he did not agree to a contract in either his professional or individual capacity.

On October 29, 2010, the plaintiff filed the present complaint. The original complaint included eight counts, but the plaintiff was allowed to proceed to trial on only two counts, the claims of breach of contract and breach of the covenant of good faith and fair dealing.[4] A jury was seated and witness testimony was presented over the course of three days. After the defendant and the city rested their case, they renewed their motion for a directed verdict: as to the defendant individually, based on a lack of evidence of an agreement, and as to the city, under the *Fennell* doctrine.[5] See *Fennell* v. *Hartford*, 238 Conn. 809, 814, 681 A.2d 934 (1996) ("[A]ll who contract with a municipal corporation are charged with notice of the extent of . . . the powers of municipal officers and agents with whom they contract, and hence it follows that if the . . . agent had in fact no power to bind the municipality, there is no liability on the express contract").

After entertaining the arguments of counsel and reviewing the city's charter, the trial court, *Sheridan,*

*J.*, concluded that *Fennell* was controlling as to the claims against the city; if a contract had been formed it could not be enforced against the city because its agents were not authorized to enter into such an agreement. The court granted the motion for directed verdict as to the claims against the city and its agents for breach of contract and breach of the covenant of good faith and fair dealing. The court also granted a directed verdict in favor of the defendant, individually, for the claims of breach of contract and breach of the covenant of good faith and fair dealing. The court concluded that there was "insufficient evidence to submit the case to the jury as to whether an agreement existed individually with [the defendant]." This appeal followed.

With respect to the grant of a motion for directed verdict as to the defendant individually, the plaintiff claims that the court "fail[ed] to give due weight to the evidence of the agreement between plaintiff and [the defendant] . . . ." We disagree. The court did not abuse its discretion in concluding that there was insufficient evidence to prove the existence of a contract.

The standard of review for the grant of a motion for a directed verdict is the abuse of discretion standard. *Tomick* v. *United Parcel Service, Inc.*, 135 Conn. App. 589, 603, 43 A.3d 722, cert. denied, 305 Conn. 920, 47 A.3d 389 (2012). "Generally, litigants have a constitutional right to have factual issues resolved by the jury. . . . Directed verdicts [therefore] are historically not favored and can be upheld on appeal only when the jury could not have reasonably and legally reached any other conclusion. . . . We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. . . . A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict." (Internal quotation marks omitted.) *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, 115 Conn. App. 680, 693, 974 A.2d 764, cert. denied, 293 Conn. 916, 979 A.2d 488 (2009).

"The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal quotation marks omitted.) *Ibar* v. *Stratek Plastic Ltd.*, 145 Conn. App. 401, 410, 76 A.3d 202, cert. denied, 310 Conn. 938, 79 A.3d 891 (2013). "The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence. . . . In order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for

them a contract which they themselves did not make." (Internal quotation marks omitted.) *Sullivan* v. *Thorndike*, 137 Conn. App. 223, 229, 48 A.3d 130 (2012).

There is insufficient evidence to infer that a contract was formed between the plaintiff and the defendant in his individual capacity. During trial, the plaintiff relied almost entirely on an undated letter that Salvatore sent to the defendant following the June 5, 2007 meeting. Specifically, Salvatore stated in the letter: "If you recall, you agreed that *if* it can be shown that the site of the Community Village Project (the 'Project') is not in fact a ridgetop, you would be in a position to recommend to the planning commission/city council to have the Project site removed from the ridgetop protection area imposed by the City of Meriden." (Emphasis in original.) The defendant did not respond to the letter. Even viewed in the light most favorable to the plaintiff, this letter did not prove a meeting of the minds on contractual terms to which the defendant intended to be bound. The letter reflected the position of the party that was proposing a contractual relationship and it was lacking the essential elements of an agreement.

The letter did not set forth any consideration to support the formation of a contract. "It almost goes without saying that consideration is [t]hat which is bargained for by the promisor and given in exchange for the promise by the promisee . . . . We also note that [t]he doctrine of consideration does not require or imply an equal exchange between the contracting parties. . . . Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." (Internal quotation marks omitted.) *Harley* v. *Indian Spring Land Co.*, 123 Conn. App. 800, 818–19, 3 A.3d 992 (2010). The trial court specifically asked the plaintiff's counsel to identify the consideration supporting the alleged contract between the plaintiff and the defendant, but counsel could not provide an answer. Now on appeal, the plaintiff claims that as consideration, the plaintiff had agreed not to sue the defendant individually for his actions in regard to the plaintiff's property. However, the plaintiff cannot specify what litigation it was threatening against the defendant as an individual. When pressed by this court on this key point, the plaintiff's counsel was unable to identify litigation pending on June 5, 2007. Moreover, the plaintiff has not provided any direct evidence that any alleged consideration was actually offered or accepted. The defendant testified that during his meeting with Salvatore on June 5, 2007: "We didn't discuss ending any litigations or not bringing new lawsuits. She alluded to the fact that there was a pending lawsuit, but she didn't make any kind of settlement offer or something. And if she had, again, that's something that has to go to the corporation counsel and has to be approved by the city council. So, I mean, she was again misstating what actually happened in that meeting."

The defendant repudiated the plaintiff's position that there was an agreement.[6] He testified that the letter bore no resemblance to the conversation that had occurred. "We didn't have that agreement. She wanted to hire a geologist. She wanted to, I guess, present that at some point in time. All that I said to her was that if we received—and by 'we,' I mean myself and staff—if we received a report from a geologist and it seemed to be reasonable and it had some level of expertise, we would certainly tell the city council. If she filed an application to change the zone, we would certainly tell the city council that, you know, there was such a report and that we had received it." The only other party present for the alleged negotiations was Salvatore. She testified at trial, but was unable to offer any additional evidence as to the existence of a contract between the plaintiff and the defendant: "I don't remember—I don't have a recollection of meeting with [the defendant]. The documents indicate that I did, so I don't have a reason to suggest that I didn't. But I don't recall the meeting itself or what we talked about."

The trial court considered the limited evidence presented to prove the existence of a contract between the plaintiff and the defendant and found it insufficient to submit to the jury. The plaintiff was unable to show consideration to support the agreement. The plaintiff was also unable to refute the defendant's testimony that a contract had not been formed or to show that it intended to contract with the defendant individually. "A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party." (Internal quotation marks omitted.) *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 512–13, 43 A.3d 69 (2012). The court did not abuse its discretion in granting a directed verdict in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff has not appealed from the trial court's granting of the motion for directed verdict in favor of the other defendants, the city of Meriden (city) and Dominick Caruso, the city's director of planning and development. Our references in this opinion to the defendant are to Kendzior. The plaintiff had also alleged breach of contract and breach of the covenant of good faith and fair dealing against the city and Caruso as arising from the same transaction involving the defendant.

[2] On appeal, the plaintiff also claims: "The trial court erred in finding that the *Fennell* doctrine shielded [the defendant] from liability for breaching his own promise." The trial court granted the motion for directed verdict in favor of the city and its agents, including the defendant in his capacity as city manager, based on the *Fennell* doctrine. See *Fennell* v. *Hartford*, 238 Conn. 809, 814, 681 A.2d 934 (1996). However, there is no record that the trial court applied the *Fennell* doctrine to grant the motion for a directed verdict in favor of the defendant *in his individual capacity*. The trial court ruled from the bench on the motion for directed verdict as it pertained to the defendant individually: "I also believe there is insufficient evidence to submit the case to the jury as to whether an agreement existed individually with [the defendant]. And, therefore, I will direct judgment for the defendant . . . ."

[3] The ridgeline protection zone is an overlay zone designed to protect certain geological formations. *Carabetta* v. *Planning Commission*, Superior

Court, judicial district of New Haven, Docket No. CV-03-0285713 (December 8, 2005). The city considered the plaintiff's property to be part of the ridge top of Cathole Mountain. In *Carabetta*, the court stated: "A Wesleyan University professor of earth and environmental science testified that the site is a part of the Cathole Mountain complex, which itself is a part of a larger ridge known as Metacomet Ridge. These traprock ridges play a vital role in providing recharge areas to water sources in Meriden. The removal of large quantities of traprock as proposed by the plaintiff would have an adverse environmental effect on the premises and the general area of Meriden." Id.

[4] The plaintiff's initial complaint included eight counts against the defendants: (1) breach of contract, (2) breach of the duty of good faith and fair dealing, (3) violation of equal protection rights, (4) tortious interference with prospective economic gain, (5) civil conspiracy, (6) violation of due process rights and fundamental fairness, (7) equitable estoppel and (8) abuse of office. The court, *Markle, J.*, granted the defendants' motion to strike the claims of tortious interference with prospective economic gain, equitable estoppel and abuse of office. After discovery, the trial court, *Sheridan, J.*, granted the defendants' motion for summary judgment as to the claims of violation of equal protection rights and violation of due process rights and fundamental fairness. After this appeal was filed, this court ordered the trial court to clarify whether it implicitly disposed of the claim of civil conspiracy when it rendered summary judgment. In response, the trial court issued a clarification of decision indicating that it had found that the defendants were entitled to summary judgment on the claim of civil conspiracy, but that it omitted this finding from its memorandum of decision. These decisions were not appealed.

[5] The defendant and the city first moved for a directed verdict when the plaintiff rested its case-in-chief. At the time, the trial court did not make a ruling and instead reserved judgment.

[6] If anything, the circumstantial evidence presented at trial inferred that the plaintiff was seeking to reach an agreement with the city, not the defendant in his individual capacity. The 2007 letter from Salvatore was addressed to the defendant at his city office and sent to his work e-mail account. The letter referred to the defendant by his official title, city manager. In the letter, Salvatore stated that the agreement would "inure to the benefit of the city of Meriden and its citizens . . . ." Nowhere in the letter did Salvatore specify any benefits that the defendant would receive individually. Finally, the plaintiff's complaint in this matter stated that the defendant was "the city's authorized agent" and that the defendant agreed to the plaintiff's offer on "behalf of the city . . . ."

—————————————————