NICHOLAS BIELLO *v.* TOWN OF WATERTOWN
(AC 27399)

Flynn, C. J., and McLachlan and Pellegrino, Js.

Argued March 28—officially released August 5, 2008

*Robert S. Kolesnik, Sr.*, with whom, on the brief, was *Robert S. Kolesnik, Jr.*, for the appellant (plaintiff).

*Michael J. Rose*, with whom, on the brief, were *Johanna G. Zelman* and *Robin B. Kallor*, for the appellee (defendant).

*Opinion*

McLACHLAN, J. The plaintiff, Nicholas Biello, appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the defendant, the town of Watertown. The plaintiff claims that the court improperly concluded that (1) it lacked subject matter jurisdiction over his wage claims arising subsequent to July 1, 1996, because he failed to exhaust internal grievance procedures before filing his complaint, (2) the holding in *Fennell* v. *Hartford*, 238 Conn. 809, 681 A.2d 934 (1996), precludes recovery for wage claims against a municipality under the theories of implied contract, unjust enrichment and quantum meruit, (3) a stipulation he signed in April, 1996, constituted an accord and satisfaction with respect to certain of his wage claims and (4) the statute of limitations precluded

recovery for all wage claims arising prior to September 13, 1997. We conclude that the court's conclusions on the first two issues are dispositive of this case and were decided correctly.[1] We affirm the judgment of the trial court.

From the evidence presented at trial, the court reasonably could have found the following facts. The plaintiff was employed by the defendant from May, 1971, through July, 2001. In 1992, he was promoted to the position of supervisor in the water and sewer department, a position covered by a collective bargaining agreement. In July, 1994, the defendant's water and sewer authority was separated from the public works department. The restructuring resulted in the creation of a new position, superintendent. That person would be the department head of the water and sewer authority. The plaintiff was offered the position of superintendent. When he declined, he was instructed to fill the position of assistant superintendent and to act as the department head until the position of superintendent could be filled. There was some question as to whether the assistant superintendent position was covered by the collective bargaining agreement.[2]

The water and sewer authority recommended to the town council that the plaintiff's salary as assistant superintendent be set at $45,808 for fiscal year 1995 (July 1, 1994, through June 30, 1995) and $50,000 for fiscal year 1996 (July 1, 1995, through June 30, 1996). Although the town council approved the position of assistant superintendent, it declined to approve the salary recommended by the water and sewer authority. Instead, the town council approved a salary in the same

---

[1] It is unnecessary, therefore, to address the plaintiff's third and fourth claims.

[2] The assistant superintendent position was not one of the listed positions in the collective bargaining agreement. Nevertheless, it is undisputed that the plaintiff continued to pay union dues.

amount that the plaintiff had been receiving in his former position as supervisor. For fiscal year 1995, the plaintiff received a base salary of approximately $38,000 plus overtime pay, totaling $47,364. For fiscal year 1996, the plaintiff's base salary of approximately $40,000 and overtime pay totaled $49,003.18.

When the defendant refused to pay the plaintiff the salary recommended by the water and sewer authority for the position of assistant superintendent, the union filed a grievance on his behalf, and the claim was submitted to arbitration. The issue submitted focused on the title of the plaintiff's position, the nature of his duties and the rate of pay he should be receiving. On April 18, 1996, shortly after the plaintiff began his presentation before the three arbitrators, the panel terminated the proceeding. The panel indicated that it lacked the authority either to create a position or to compel the defendant to staff it and that it lacked the authority to compel the defendant to set a particular rate of pay for a position if it existed. Shortly thereafter, on that same day, the parties entered into an agreement under which the plaintiff was to be compensated $10,000 "for additional duties performed between July 1, 1994 to June 30, 1996." The stipulation was dated and signed by the plaintiff, the defendant and the union on April 18, 1996.[3]

On July 1, 1996, the position of superintendent was filled, the position of assistant superintendent was eliminated and the plaintiff was returned to his former position of supervisor. At that point, it is undisputed that

---

[3] The plaintiff received the payment and cashed the check. That amount was added to his base salary and overtime pay for fiscal year 1996, resulting in total earnings of $59,003.18.

The defendant argued that the parties' stipulation constituted an accord and satisfaction with respect to all of the plaintiff's wage claims that arose from the duties he performed as the acting department head and the assistant superintendent. The plaintiff argued that the settlement only resolved those claims relating to the additional duties he performed as the acting department head from July 1, 1994, through June 30, 1996. It is unnecessary to

he was again a member of the collective bargaining unit. He claims that he continued to perform the duties of assistant superintendent until he retired in 2001. He did not file any grievances after July 1, 1996, with respect to his continuing claim that the defendant was not paying him an appropriate salary. In that regard, he maintained that he should have been paid the amount recommended by the water and sewer authority for fiscal years 1995 and 1996, and that, thereafter, he should have been paid at a rate reflective of the assistant superintendent duties he performed even though his job title had reverted to that of supervisor.

On September 27, 1999, the plaintiff filed a complaint alleging breach of an implied contract, unjust enrichment, quantum meruit and breach of the implied covenant of good faith and fair dealing.[4] A four day trial on the plaintiff's complaint was conducted in September and October, 2005, and on January 18, 2006, the court, *Hon. Howard J. Moraghan*, judge trial referee, issued its memorandum of decision. In that decision, the court concluded that it lacked subject matter jurisdiction over the plaintiff's wage claims accruing subsequent to July 1, 1996, because the plaintiff had failed to exhaust internal grievance procedures available under the collective bargaining agreement. The court further found that the town council, by charter, had the sole authority to determine the plaintiff's salary and that the recommendation of the water and sewer authority, for an amount in excess of the salary approved by the town council, did not constitute an implied contract. The court reasoned

---

address this claim in light of our conclusions with respect to the other issues discussed in this opinion.

[4] The plaintiff also alleged negligent and intentional infliction of emotional distress in counts three and four of his four count complaint. On January 30, 2004, the court, *Leheny, J.*, granted the defendant's motion for summary judgment as to those counts, and the plaintiff on appeal has not challenged that ruling.

that *Fennell* v. *Hartford,* supra, 238 Conn. 809, precluded recovery under the theories of implied contract, unjust enrichment and quantum meruit. The court also found that the stipulation constituted an accord and satisfaction with respect to certain of the plaintiff's wage claims and that the statute of limitations precluded recovery for the wage claims arising prior to September 13, 1997. The court rendered judgment in favor of the defendant, and this appeal followed.

I

The plaintiff's first claim is that the court improperly determined that it lacked subject matter jurisdiction over wage claims arising subsequent to July 1, 1996. The court determined that when the plaintiff's position reverted to supervisor on July 1, 1996, once again he was covered by the terms and conditions of the collective bargaining agreement. Because the plaintiff failed to raise his claims pursuant to the grievance and arbitration provisions contained in that agreement, the court concluded that he failed to exhaust the remedies available to him.

The plaintiff does not argue that he was not an employee covered by the collective bargaining agreement, nor does he contend that the court incorrectly determined that he did not utilize the procedures set forth in that agreement. Instead, he claims that a prior ruling of the court, *Leheny, J.,* in which it denied the defendant's motion for summary judgment on this issue, and Judge Moraghan's prior ruling, in which he denied the defendant's motion to dismiss the plaintiff's complaint on the ground that he failed to join the union as a necessary and indispensable party, constituted the law of the case and could not be overruled absent some new or overriding reason.

The law of the case doctrine provides that "[w]here a matter has previously been ruled upon interlocutorily,

the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Internal quotation marks omitted.) *Wasko* v. *Manella*, 87 Conn. App. 390, 395, 865 A.2d 1223 (2005). "A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . [O]ne judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 130–31, 788 A.2d 83 (2002).

The previous rulings of the court did not address directly the issue as presented before Judge Moraghan when he rendered final judgment. Further, a court must view the evidence in the light most favorable to the nonmoving party when considering a motion for summary judgment; see *Lopes* v. *Farmer*, 286 Conn. 384, 388, 944 A.2d 921 (2008); and is required to construe the facts as alleged in the complaint in a manner most favorable to the pleader when considering a motion to dismiss. See *Fort Trumbull Conservancy, LLC* v. *New London*, 265 Conn. 423, 432–33, 829 A.2d 801 (2003). After four days of evidence submitted at trial, the court made a reasoned determination that the plaintiff was a member of the union as of July 1, 1996, and was covered by the terms and conditions of a collective bargaining agreement. Further, the court found that he did not follow the grievance and arbitration provisions in that agreement with respect to the wage claims accruing after that date, the same claims that he now asserts in the present case.

"The exhaustion of remedies doctrine is applied in a number of different situations . . . including when an exclusive grievance or arbitration procedure is contained in a collective bargaining agreement and when an administrative appeal is taken. In both contexts, if a party has failed to avail itself of the arbitration or appeal process, the trial court is without subject matter jurisdiction to hear its claims." (Citation omitted.) *Neiman* v. *Yale University*, 270 Conn. 244, 253, 851 A.2d 1165 (2004). The plaintiff has not challenged the court's factual findings that he could have availed himself of the grievance procedures set forth in the collective bargaining agreement after July 1, 1996, and that he failed to do so. Accordingly, we conclude that the court properly determined that it lacked subject matter jurisdiction over the wage claims that accrued after that date.

## II

The plaintiff's next claim is that the court improperly concluded that the holding in *Fennell* v. *Hartford,* supra, 238 Conn. 809, precluded his recovery against the defendant for wage claims under the theories of implied contract, unjust enrichment and quantum meruit. Specifically, the plaintiff argues that Judge Leheny's previous ruling, denying the defendant's motion for summary judgment, constituted the law of the case. The plaintiff claims that the court's decision on the motion for summary judgment addressed the argument that *Fennell* precluded recovery and rejected it. The plaintiff argues that the previous ruling, concluding that the holding of *Fennell* was limited to implied contracts that are based on pension or employee manuals, was correct and that Judge Moraghan improperly held to the contrary when he rendered judgment. We disagree.

A court is not bound to follow a prior interlocutory ruling that it finds to be incorrectly decided. See *Wasko*

v. *Manella*, supra, 87 Conn. App. 395. In rendering judgment in favor of the defendant in the present case, the court quoted extensively from *Fennell* and agreed with the defendant's position that the doctrines of implied contract, unjust enrichment and quantum meruit do not apply in municipal employee wage claim disputes. Judge Moraghan's determination was correct, and, therefore, it would have been improper to follow the law of the case under these circumstances.

Additional facts are helpful in our analysis. Watertown's first charter was adopted on July 6, 1961. *Van Deusen* v. *Watertown*, 62 Conn. App. 298, 304, 771 A.2d 177, cert. denied, 256 Conn. 911, 772 A.2d 1125 (2001). The court found—and the finding is unchallenged by the plaintiff—that the defendant's charter "recites and establishes that the town council is the only entity with authority to set the salary of an assistant superintendent . . . ."[5] Although the water and sewer authority made a recommendation to the town council as to the plaintiff's proposed salary in the position of assistant superintendent, the water and sewer authority is an entity subordinate to the town council.[6]

"It has been well established that a city's charter is the fountainhead of municipal powers . . . . The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised. . . . Agents of a city, including [its commissions], have no source of authority beyond the charter. . . . In construing a city charter, the rules of statutory construction generally apply. . . .

---

[5] Section 609 of the Watertown town charter provides: "Compensation. Salaries of all the directors and other employees of the Town directly or indirectly under the supervision of the Town Manager shall be determined by the Town Council, upon the recommendation of the Town Manager."

The town manager is the chief executive officer in the town of Watertown.

[6] Section III.2 of appendix B of the Watertown town charter provides in relevant part: "Powers and duties. The Water and Sewer Authority . . . is in no way to be construed as an autonomous Authority, but shall be a subordinate body of the Town Council. . . ."

"The officer, body or board duly authorized must act [on] behalf of the municipality, otherwise a valid contract cannot be created. Generally the power to make contracts on behalf of the municipality rests in the council or governing body . . . . Generally, no officer or board, other than the common council, has power to bind the municipal corporation by contract, unless duly empowered by statute, the charter, or authority conferred by the common council, where the latter may so delegate its powers . . . . It follows that agents of a city, including its commissions, have no source of authority beyond the charter. [T]heir powers are measured and limited by the express language in which authority is given or by the implication necessary to enable them to perform some duty cast upon them by express language. . . . [A]ll who contract with a municipal corporation are charged with notice of the extent of . . . the powers of municipal officers and agents with whom they contract, and hence it follows that if the . . . agent had in fact no power to bind the municipality, there is no liability on the express contract . . . . Thus, every person who deals with [a municipal corporation] is bound to know the extent of its authority and the limitations of its powers." (Citations omitted; internal quotation marks omitted.) *Fennell* v. *Hartford*, supra, 238 Conn. 813–14.

Given these well established principles, the plaintiff does not argue that he had an express contract with the defendant for the salary amount recommended by the water and sewer authority. Rather, he argues that he was entitled to additional wages under the theories of implied contract, unjust enrichment or quantum meruit. "An implied contract is an agreement between the parties which is not expressed in words but which is inferred from the acts and conduct of the parties." *Brighenti* v. *New Britain Shirt Corp.*, 167 Conn. 403, 406, 356 A.2d 181 (1974). "Quantum meruit is a theory

of contract recovery that does not depend upon the existence of a contract, either express or implied in fact. . . . Rather, quantum meruit arises out of the need to avoid unjust enrichment to a party, even in the absence of an actual agreement. . . . [Q]uantum meruit and unjust enrichment are common-law principles of restitution; both are noncontractual means of recovery without [a] valid contract . . . ." (Citations omitted; internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 255 Conn. 390, 401, 766 A.2d 416 (2001), on appeal after remand, 80 Conn. App. 436, 835 A.2d 491 (2003), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004).

*Fennell* v. *Hartford*, supra, 238 Conn. 809, however, is dispositive of the plaintiff's claims. In *Fennell*, three retired police officers of the defendant city claimed that they were entitled to certain pension and retirement benefits with respect to accrued sick leave and service credits for military time. Id., 811. The plaintiffs argued that certain provisions in the pension manual prepared and distributed by the defendant's pension commission summarizing their retirement benefits created an implied contract. The plaintiffs claimed that under appropriate circumstances, the terms of an employment manual may give rise to an implied contract between employer and employee in the public sector. Id., 812–13.

Our Supreme Court disagreed. The court reasoned as follows: "[C]ourts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel. . . . We believe that implied contract claims in the public sector, based upon pension or employee manuals, would only invite endless litigation over both real and imagined claims of misinformation by disgruntled citizens [and employees], imposing an unpredictable drain on the public fisc." (Citation omitted; internal quotation marks omitted.) Id., 816. "On the basis of the above considerations,

we cannot superimpose implied contract principles upon the terms of the plaintiffs' pension based upon a representation in a pension manual. We conclude, as a matter of law, that the pension manual created and distributed by the commission could not confer any additional benefits not provided for by the city's charter." Id. "In order for additional retirement or pension benefits to be conferred on the plaintiffs and other city employees, the city council must adopt ordinances in compliance with the statutory and charter mandates. . . . The plaintiffs concede that this was not done. *If additional benefits were allowed to be conferred in any other manner, the actions of the commission would impinge on the city council's legislative prerogative to oversee the maintenance of the city's municipal employees' retirement fund. . . . In sum, the commission was without authority to confer additional benefits through the pension manual.*" (Citations omitted; emphasis added.) Id., 817–18.

In the present case, the plaintiff argues that the holding in *Fennell* is limited to claims of implied contract that are based on pension or employee manuals. The plaintiff further attempts to distinguish *Fennell* on the ground that the representation in the pension manual was written whereas the representations to him were oral. We conclude that the reasoning in *Fennell* applies under the circumstances of this case. The water and sewer authority simply had no authority to establish the plaintiff's salary. The fact that the representations were oral is not helpful to the plaintiff's claim. As *Fennell* indicates, implied contract claims in the public sector would invite endless litigation on the basis of misinformation by employees, thereby drawing down the public fisc. Such misinformation is even more likely if based on oral rather than written representations.[7]

---

[7] Although *Fennell* did not address claims of quantum meruit or unjust enrichment, we conclude that the rationale behind the policy equally applies to those theories of recovery in municipal employment situations.

Accordingly, because the water and sewer authority lacked the authority to set the plaintiff's salary, and because the town council did not approve the suggested salary, the court properly determined that the plaintiff's wage claims were precluded under the theories of implied contract, unjust enrichment and quantum meruit.

The judgment is affirmed.

In this opinion the other judges concurred.

---

We note that *Vertex, Inc.* v. *Waterbury,* 278 Conn. 557, 577 & n.14, 898 A.2d 178 (2006), recognized that a claim for unjust enrichment could be made against a municipality. That case, however, involved a claim made by a plaintiff corporation that had installed a computer software program on the defendant city's computers under a written contract. The corporation sought additional money for additional services rendered in connection with the performance of that contract. Municipal employment cases, like *Fennell* and the present case, however, involve different considerations. See *Fennell* v. *Hartford,* supra, 238 Conn. 816.